UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| VIRGINIA SHEPHARD, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 1:12 CV 87 |
| WAL-MART STORES EAST, LP, d/b/a WAL-MART SUPERCENTER, | ) |  |
| Defendant. | ) |  |

## OPINION and ORDER

I.    **BACKGROUND**

Plaintiff Virginia Shephard, a female in her mid-fifties during the time period relevant to the present lawsuit, began working for defendant Wal-Mart Stores East, LP, in 1999. (DE # 26-2 at 14, Pl. Dep. 52:17-24.) After about a decade of service, plaintiff claims she experienced difficulties with store manager Hatem Ali. Specifically, plaintiff claims that for approximately one to two years (from 2008 or 2009 through April of 2010), Ali asked her questions about her divorce between ten and twenty times, and greeted her each day by putting his arm around her shoulder and asking her "How are you doing today? Whatcha going to be doing today?" (DE # 41-1 at 3; DE # 45-1 at 20-28, Pl. Dep. 163-171.) Plaintiff states that in April 2010, she told Ali that she was dating someone, so Ali would leave her alone. (DE # 42 at 3.) She claims that after she told Ali she was dating someone, Ali became hostile and negative. (*Id.*) Plaintiff claims that she complained to store co-manager Patrick Azzarello about Ali's conduct at some point. (*Id.* at 4.)

Plaintiff also alleges that she experienced difficulties with a zone manager named Tammy Kleeberg. Plaintiff claims that at some point between April 2010 and September 2011, Kleeberg told plaintiff: "[W]e're trying to get rid of old people like Deloris [another employee], then we'll make more money." (DE # 42 at 4; DE # 41-1 at 6.) Plaintiff further alleges that, at some unknown time, Kleeberg said that management was "trying to get rid of the old employees" and the "old people." (DE # 42 at 4; DE # 41-1 at 6-7.) Plaintiff also alleges that, at another unknown time, plaintiff asked for an additional employee to assist with the work load in her department, and Kleeberg responded: "[W]hy don't you just step down gracefully and take something easy, since you don't have no help? I can't get them to leave them here to help you. Just step down and take people greeter or cashier." (DE # 42-4 at 4; DE # 41-1 at 6.) Plaintiff claims that she told John Wolf, the district manager above Ali, about Kleeberg's comments. (DE # 41-1 at 2, 9.)

Plaintiff claims that she experienced a number of negative consequences on the job after her encounters with Ali and Kleeberg. Plaintiff states that she was issued a verbal coaching by an assistant manager on April 16, 2010. (*Id.* at 5) Additionally, plaintiff claims that in April 2010, defendant increased her workload by requiring her to handle the modulars in the pharmacy department (a job that was two years overdue for updating), plaintiff was scheduled to work every Saturday, plaintiff was required to work during and over breaks, in September 2010 she received a poor performance review purportedly addressing her performance in 2009, and in November 2010 she

2

received a written coaching for misconduct relating to "integrity," in which defendant claimed that plaintiff had removed coupons from perfume boxes for her own personal gain. (*Id.* at 5-6, 12.) Plaintiff was disciplined with a "decision day" coaching on March 21, 2011, for alleged continued productivity problems and insubordination, and was terminated on March 22, 2011.[1] (*Id.* at 7.)

Plaintiff filed a charge of discrimination on June 6, 2010, alleging that she was subjected to a hostile work environment on the basis of sex and age in violation of her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (DE # 42 at 2.) After the EEOC issued a right to sue letter, plaintiff filed the present lawsuit making the same allegations. (DE # 1.) Defendant has moved for summary judgment. (DE # 24.) The motion and a related motion to strike (DE # 48) have been fully briefed by both sides and are ripe for ruling.

## II. LEGAL STANDARD

Defendant has moved for summary judgment. FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

---

[1] In a long list of alleged negative consequences she claims she experienced, plaintiff also states that she was denied a raise, but the evidence cited does not contain any support for this contention, so the court will not consider it. (DE # 42 at 10.)

"[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

## III. DISCUSSION

### A. Defendant's Motion to Strike

Defendant has moved to strike an exhibit filed by plaintiff. (DE # 48.) Specifically, defendant moves to strike a transcript purporting to represent the contents of various audio recordings of conversations with various co-workers, which were recorded surreptitiously by plaintiff. (*Id.*)

The court must strike this evidence for several reasons. First, the actual audio recordings were never submitted to the court, even after defendant pointed out this shortcoming in its motion to strike. "[I]t is the tape recording of the conversation that constitutes evidence of what was said, not the transcript." *Stringel v. Methodist Hosp. of Ind., Inc.,* 89 F.3d 415, 420 (7th Cir. 1996). Further, though a court can admit a transcript of an audio recording to assist a fact-finder in understanding the evidence before it, the court must ensure the authenticity of the tape recording itself. *Id.* (explaining a seven-factor test for authenticity, including consideration of "the competency of the operator, the fidelity of the recording equipment, the absence of material alterations in the relevant portions of the recording, and the identity of the speakers"). Also, "[t]he district court . . . bears an obligation to make sure in the first instance that the tape recording is, within reason, intelligible." *United States v. Howard,* 80 F.3d 1194, 1198 (7th Cir. 1996).

The court is unable to complete these tasks without the audio recordings themselves. This is the stage at which plaintiff should have submitted them. *Everroad v.*

*Scott Truck Sys., Inc.,* 604 F.3d 471, 476 (7th Cir. 2010) (district court did not abuse discretion in declining to consider transcripts as evidence at summary judgment stage because audio recordings were not submitted to court, and "[s]ummary judgment proceedings provide the 'put up or shut up' moment in litigation"). Because plaintiff failed to submit the actual evidence – the tape recordings themselves – to the court, defendant's motion to strike the transcripts purporting to represent the contents of those tape recordings is granted.[2]

### B. Sex-Based Harassment

Plaintiff alleges that she was subjected to sexual harassment while working for defendant. Sexual harassment is a form of sex discrimination under Title VII. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65-66 (1986). Sexual harassment is not limited to *quid pro quo* situations; a sexually hostile or abusive work environment can also constitute sexual harassment in violation of the law. *Id.*

To survive defendant's summary judgment motion on her harassment claim, plaintiff must show: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her race or gender; (3) the harassment was severe or pervasive so as to alter the conditions of plaintiff's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Williams v. Waste Mgmt. of Ill., Inc.,* 361 F.3d 1021, 1029 (7th Cir. 2004).

---

[2] In any event, the court reviewed the transcripts submitted by plaintiff and found that the contents did not affect the outcome of plaintiff's case.

Plaintiff's sexual harassment claim fails because she cannot demonstrate an issue of fact regarding the third element. For sexual harassment to be actionable, plaintiff must prove that she was subjected to conduct that was so severe or pervasive as "'to alter the conditions of [her] employment and create an abusive working environment.'" *Meritor,* 477 U.S. at 67 (quoting *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir. 1982)). Courts are to consider: (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim. *Nichols v. Michigan City Plant Planning Dep't,* 755 F.3d 594, 601 (7th Cir. 2014). In evaluating the severity of harassment, the court is guided by prior case precedent:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430–31 (7th Cir. 1995) (internal citations omitted). The court also assesses the impact of the harassment on the plaintiff's work environment from both a subjective and objective viewpoint; the situation must be "'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Gentry v. Export Packaging Co.,* 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998)). When assessing

7

the severity of a work environment, courts are to avoid parsing out the environment into seemingly benign parts; rather, courts should consider all of the alleged conduct in the aggregate. *Nichols,* 755 F.3d at 601.

In this case, plaintiff claims that for approximately one to two years (from 2008 or 2009 through April of 2010) Ali asked her questions about her divorce between ten and twenty times, and greeted her each day by putting his arm around her shoulder and asking her "How are you doing today? Whatcha going to be doing today?" (DE # 41-1 at 3; DE # 45-1 at 20-28, Pl. Dep. 163-171.) Plaintiff also claims that after she told Ali she was dating someone, she was issued a verbal coaching by an assistant manager in April 2010, defendant increased her workload requiring her to handle the modulars, plaintiff was scheduled to work every Saturday, plaintiff was required to work during and over breaks, she received a poor performance review in September 2010, and in November 2010 she received a written coaching for misconduct relating to "integrity" (for allegedly removing coupons from perfume boxes). (DE # 42 at 5-6, 12.)

While Ali's questions regarding plaintiff's divorce and his practice of putting his arm around plaintiff each morning to say hello went on for one or two years, this conduct is "tinged with sexual innuendo," at best, and not severe in the legal sense. *Baskerville,* 50 F.3d at 430–31. Further, while Ali's practice of greeting plaintiff with an arm around her shoulder, in particular, was no doubt frequent, a reasonable person would not deem such an action offensive, nor was Ali physically threatening or humiliating. *See Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir. 2000)

8

(distinguishing between "the sort of casual contact which (if it were consensual) might be expected between friendly co-workers" and "more intimate, intrusive forms of contact," the latter of which might be actionable); *cf. Valentine v. City of Chi.,* 452 F.3d 670, 681 (7th Cir. 2006), as amended (July 6, 2006) (co-worker who rubbed crotch in front of plaintiff nearly every day, asked her on twenty occasions to leave her fiance, asked her on dates between 30 and 40 times, made repeated comments about her "tits" and "ass," and on six occasions rubbed plaintiff's arm or shoulder created issue of fact regarding existence of hostile work environment). Nor does plaintiff allege facts from which it can be inferred that Ali's daily contact or inquiries about her divorce unreasonably interfered with her work performance.

As for the remainder of plaintiff's allegations regarding the negative fall-out she claims she experienced after telling Ali she was dating someone, these actions, even when combined with each other and with Ali's alleged conduct, do not rise to the level of harassment prohibited by federal law. *Conley v. Vill. of Bedford Park,* 215 F.3d 703, 707 (7th Cir. 2000) (allegations that employer gave employee the "worst job assignments," isolated him from other employees, failed to offer him overtime, did not permit him to drive a village vehicle, and failed to promote him were insufficient to meet severe or pervasive standard); *Hobbs v. City of Chi.,* 573 F.3d 454, 464-65 (7th Cir. 2009) (allegations that plaintiff experienced undesirable work assignments, a verbal reprimand, a suspension, and vandalism to her car did not raise issue of fact regarding harassment claim); *Young v. Will Cnty. Dep't of Pub. Aid,* 882 F.2d 290, 294 (7th Cir. 1989)

9

(withholding of salary increase and unfavorable work evaluations do not constitute harassment); *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 303 (7th Cir. 2004) (transfers, a late overtime payment, unsatisfactory salary, and difficulties with managers were "normal workplace friction," not harassment); *Darbha v. Capgemini Am., Inc.,* No. 10 C 2581, 2012 WL 718826, at *9 (N.D. Ill. Mar. 6, 2012) *aff'd*, 492 F. App'x 644 (7th Cir. 2012) (negative performance review and the performance improvement plan were realities of office environment and did not constitute harassment). Because plaintiff cannot demonstrate that the alleged harassment she experienced was so severe or pervasive as to alter the conditions of her work environment by creating a hostile or abusive situation, her sex-based harassment claim fails. *Williams,* 361 F.3d at 1029.

### C. Age-Based Harassment

Plaintiff also alleges that she was the victim of age-based harassment. In support of this claim, plaintiff claims that Kleeberg said "[W]e're trying to get rid of old people like Deloris, then we'll make more money" and "[W]hy don't you just step down gracefully and take something easy, since you don't have no help? I can't get them to leave them here to help you. Just step down and take people greeter or cashier." (DE # 42-4 at 4; DE # 41-1 at 6-7.) She also claims that Kleeberg stated that management was "trying to get rid of the old employees" and the "old people." (*Id.*)

Plaintiff claims that after the comments were made by Kleeberg and then reported by plaintiff to Wolf, she experienced a number of unpleasant consequences – the same consequences she claims contributed to a sex-based hostile work environment.

10

To repeat, plaintiff claims that she was issued a verbal coaching, her workload was increased, she was scheduled to work Saturdays, she was required to work during and over breaks, she received a poor performance review, and she received a written coaching for misconduct. (DE # 42 at 5-6, 12.)

Like sex-based harassment, age-based harassment must be severe or pervasive. *Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 678 (7th Cir. 2005). Like plaintiff's sex-based harassment claim, plaintiff's age-based harassment claim fails on this basis. The only two of Kleeberg's three comments that referenced age included no reference to plaintiff (one referred to "old people" and "old employees," and the other referred to plaintiff's co-worker Deloris). These comments carry little weight in establishing the severity of the harassment plaintiff claims she experienced, because the Seventh Circuit has stated that "'second-hand' harassment" such as this is "lesser in impact than harassment directed at the plaintiff." *Ezell v. Potter,* 400 F.3d 1041, 1048 (7th Cir. 2005). Kleeberg's other comment, regarding plaintiff stepping down gracefully, *does* refer to plaintiff, but Kleeberg made no reference to age in this comment, so it has similarly weak probative value. *See Adusumilli v. City of Chi.,* 164 F.3d 353, 361-62 (7th Cir. 1998).

Further, no reasonable juror would conclude that this small number of weak allegations, in combination, qualifies as severe or pervasive harassment. *McKenzie v. Ill. Dep't. of Transp.,* 92 F.3d 473, 480 (7th Cir.1996) (three comments over a three month period were not frequent or severe enough to rise to the level of unreasonably interfering with plaintiff's work environment); *Adusumilli,* 164 F.3d at 361 (a few

ambiguous comments, amongst other things, were not sufficiently severe or pervasive to be actionable); *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 271 (7th Cir. 2004) (isolated incidents, unless extremely serious, are not sufficient to sustain a hostile work environment claim).

Even when combined with plaintiff's assertion that her work environment became negative in other ways (*i.e.*, plaintiff was given an additional work assignment, was scheduled to work on Saturdays, was required to work during and over breaks, and received a poor performance review and verbal and written coachings), plaintiff's allegations fail to demonstrate a hostile work environment. As explained previously in the context of plaintiff's sex-based harassment claim, these additional circumstances do not demonstrate a hostile work environment. In sum, plaintiff's evidence fails to create an issue of fact regarding whether plaintiff experienced severe or pervasive harassment on the basis of her age, and her age-based harassment claim fails as a result. *See Racicot,* 414 F.3d at 678.

### D. Retaliation in Violation of Title VII and ADEA

Plaintiff also claims she was retaliated against in violation of Title VII and the ADEA. Under both statutes, it is unlawful for an employer to "discriminate against" an employee because she "opposed any practice made an unlawful employment practice" by the statute, or because she "made a charge, testified, assisted, or participated in" an "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a).

Engaging in a protected activity is a necessary element of plaintiff's retaliation claim under any statute and under any method of proof. *Jajeh v. County of Cook,* 678 F.3d 560, 569 (7th Cir. May 2, 2012) (Title VII); *Hutt v. AbbVie Products LLC,* 757 F.3d 687, 693-94 (7th Cir. 2014) (ADEA).

Plaintiff's explanation of why her retaliation claims should survive summary judgment is muddled and vague. For the most part, plaintiff appears to argue that Ali "retaliated" against her for telling him she was dating someone. (DE # 42 at 14-17.) Of course, any such claims fail because no protected activity occurred in this scenario. Plaintiff's act of telling Ali she was dating someone does not qualify as "opposing" harassment. "Rebuffing" a co-worker's sexual advances is considered a protected activity in some circuits (the Seventh Circuit has yet to decide, *see Tate v. Exec. Mgmt. Servs., Inc.,* 546 F.3d 528, 532 (7th Cir. 2008)), but in this situation, Ali did not make a sexual advance and plaintiff did not rebuff.

Plaintiff states that she "did report the unlawful conduct [of both Ali and Kleeberg] and complained to managers," which could qualify as opposition under the retaliation statutes. (DE # 42 at 14.) But even if this were true, plaintiff's retaliation claim fails because an employee does not engage in a protective activity when she reports behavior premised on an objectively unreasonable belief that the behavior in question violated the law. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 631 (7th Cir. 2011). As explained in detail above, the alleged actions of Ali and Kleeberg (even when combined with other negative workplace experiences, such as changes in plaintiff's schedule and

13

negative performance reviews) did not create a hostile work environment as a matter of law. Ali asked plaintiff about her divorce between ten and twenty times over the course of a couple of years, and greeted her each day with an arm around her shoulder and the relatively innocuous phrase "How are you doing today?" Kleeberg made two comments involving the age of other persons, and asked plaintiff why she did not take a job as a cashier or greeter. These interactions are tinged with reference to plaintiff's sex or age in legally insignificant ways, and the negative effects plaintiff claims she experienced in her work environment (*i.e.*, negative performance reviews and changes to her schedule and assignments) are typical workplace frustrations and irritations.

In sum, any belief that Ali's or Kleeberg's actions (with or without the additional negative workplace experiences she alleged she suffered afterwards) created a hostile work environment would be objectively unreasonable. Accordingly, plaintiff's complaints to her superiors did not constitute protected activities for purposes of her Title VII and ADEA retaliation claims. *See O'Leary,* 657 F.3d at 631; *Durkin v. City of Chicago,* 341 F.3d 606, 615 (7th Cir. 2003) (complaints to employer about subject matters other than harassment are not protected activities for purposes of retaliation claim). Without a protected activity to ground her retaliation claims, those claims fail. *See Jajeh,* 678 F.3d at 569; *Hutt,* 757 F.3d at 693-94.

IV.  **CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment (DE # 24) is **GRANTED.** Defendant's motion to strike (DE # 48) is also **GRANTED.** Because

no claims remain against any defendants in this case, the clerk is to enter final judgment in favor of defendant Wal-Mart Stores East, LP, d/b/a Wal-Mart Supercenter, stating that plaintiff Virginia Shephard shall take nothing by way of her complaint.

**SO ORDERED.**

Date: June 17, 2015

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT